UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SUSAN R. GUSTIN,
                    *Plaintiff-Appellant,*

v.

WEST VIRGINIA UNIVERSITY; WEST
VIRGINIA UNIVERSITY COLLEGE OF
BUSINESS AND ECONOMICS; WEST
VIRGINIA HIGHER EDUCATION INTERIM
GOVERNING BOARD; WEST VIRGINIA
HIGHER EDUCATION POLICY
COMMISSION; WEST VIRGINIA
UNIVERSITY BOARD OF ADVISORS,
successors in interest to the WEST
VIRGINIA BOARD OF TRUSTEES (state
agencies),
                    *Defendants-Appellees.*

No. 02-1659

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-01-104-2)

Argued: February 27, 2003

Decided: May 16, 2003

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Robert Quentin Sayre, Jr., Charleston, West Virginia, for Appellant. Barbara Gale Arnold, MACCORKLE, LAVENDER, CASEY & SWEENEY, P.L.L.C., Charleston, West Virginia, for Appellees. **ON BRIEF:** Gary W. Rich, Morgantown, West Virginia, for Appellant. P. Gregory Haddad, MACCORKLE, LAVENDER, CASEY & SWEENEY, P.L.L.C., Morgantown, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Susan Gustin, Assistant Dean for Student Affairs at the West Virginia University College of Business and Economics, brought suit against her employer and other affiliated entities, seeking recovery for unequal pay in violation of federal and state law. The action commenced in state court and was removed to federal district court. Gustin filed a motion to remand, which the court denied. The defendants filed a motion for summary judgment, which was granted. Gustin now appeals. For the reasons that follow, we affirm the district court.

I.

Susan Gustin is the Assistant Dean for Student Affairs at the West Virginia University College of Business and Economics ("the College"). She was appointed to this position in 1995, and is the first female to hold an assistant dean position at the College. At the time of her appointment, Gustin earned a salary of $50,016. Richard Gardner, a male assistant dean in the College, was being paid $70,152. The disparity was attributed to Gardner's "decades of service as the University's budget director." The school noted that Gardner's "current

salary [was] well above the rate the College would pay to fill his position with someone lacking that extraordinary experience."

When Gardner retired in 1999, his successor, Jesse Mancini, received a salary almost identical to that of Gardner, allegedly because Mancini assumed additional responsibilities for the physical facilities of the College. Since Mancini's promotion to the position of assistant dean, Gustin has made several attempts to have her salary raised to a comparable level, none of which have been successful.

Gustin filed a complaint in the Circuit Court of Kanawha County, West Virginia, alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d) (1998), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., and the West Virginia Human Rights Act, W. Va. Code § 5-11-1-20.[1] The complaint also alleged retaliation. The suit was filed against West Virginia University ("the University"), West Virginia University College of Business and Economics, West Virginia Higher Education Policy Commission, West Virginia University Board of Advisors, successors-in-interest to the West Virginia Board of Trustees, and state agencies (collectively, "Defendants"). Defendants removed the case to the United States District Court for the Southern District of West Virginia at Charleston. Gustin filed a motion for remand, which was denied. Defendants filed a motion for summary judgment, which the district court granted. Gustin timely filed this appeal.

II.

This Court reviews *de novo* questions of subject matter jurisdiction, including those related to the propriety of removal. *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). This Court also reviews a district court's award of summary judgment *de novo*. *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 491 (4th Cir. 2003). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[1]Prior to filing this suit, Gustin filed a complaint with the West Virginia Human Rights Commission, which determined that there was no probable cause for Gustin's claim that she was paid on an unequal basis due to her sex.

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *In re Celotex Corp.*, 123 F.3d 619 (4th Cir. 1997).

## III.

On appeal, Gustin contends that the district court erred in: (1) denying her motion to remand; (2) granting summary judgment in favor of Defendants on her claims premised upon the Equal Pay Act and other related statutes; and (3) granting summary judgment in favor of Defendants on her claims of retaliation. We address these arguments in turn.

## A.

Gustin argues that the Defendants are immune to suit in federal court under the Equal Pay Act and, therefore, remand to state court is appropriate. The problem with Gustin's argument is that she attempts to assert Eleventh Amendment immunity on behalf of the Defendants, and there is no precedent to support such an assertion. Eleventh Amendment immunity is a defense reserved only for a state actor; it may not be invoked by a plaintiff to control the forum. Even if Gustin *could* assert Eleventh Amendment immunity on behalf of Defendants, she would be barred from doing so here because, by removing the case to federal court, Defendants waived any Eleventh Amendment immunity defense to which they may have been entitled. *Lapides v. Bd. of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613, 122 S. Ct. 1640 (2002) ("The State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity."). Thus, we affirm the district court's denial of Gustin's motion to remand this action.

## B.

Next, Gustin argues that the district court erred in granting summary judgment in favor of Defendants on her claims of wage discrimination. For the reasons that follow, we find that Gustin failed to establish a *prima facie* case under the Equal Pay Act, Title VII, or the WVRHA.

1.

To establish a *prima facie* case under the Equal Pay Act, Gustin must prove: "(1) that her employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 613 (4th Cir. 1999) (citing *Corning Glass Works v. Brennan*, 417 U.S. 1888, 1895 (1974)). Neither party disputes that Gustin was compensated approximately $20,000 less than her counterpart, Assistant Dean Jesse Mancini, and his predecessor, Assistant Dean Richard Gardner. Therefore, our analysis begins with the second prong of the *prima facie* test.

Under the second prong of this test, Gustin must show that she and her comparator, Mancini, held jobs requiring equal skill, effort, and responsibility.[2] Although Gustin and Mancini both hold the title of Assistant Dean, we must evaluate their actual job requirements and performance; job titles are not dispositive. *Brennan v. Prince William Hosp. Corp.*, 503 F.2d 282, 288 (4th Cir. 1974) (citing 29 C.F.R. § 800.121 (1973); *Hodgson v. Brookhaven General Hosp.*, 436 F.2d 719, 724 (5th Cir. 1970)). Gustin argues that her job need only be substantially similar to that of Mancini. *See Mulhall v. Advance Security, Inc.*, 19 F.3d 586 (11th Cir. 1994) (finding that, where one vice-president managed money primarily and people secondarily, and the other managed people primarily and money secondarily, the positions were substantially similar such as to support a claim under the Equal Pay Act). In *Mulhall*, however, both comparators reported directly to the president of the company. In the instant case, in performing some of her job duties, Gustin reports to Mancini. Gustin testified that, before exercising her authority to hire student workers, she must obtain permission from Mancini, who oversees all budgets within the College, before hiring an additional person. Thus, we conclude that the salary differential is justified because Mancini's position and duties are in fact superior to Gustin's.

---

[2]Although Gustin was compensated less than Gardner, she does not argue that this disparity is a part of her wage discrimination claims. Therefore, our analysis focuses on the disparity between the salaries of Gustin and Mancini.

Further, the responsibilities of Gustin and Mancini are not equal. While both Gustin and Mancini supervise and direct staff and manage summer school offerings, the similarities in their job responsibilities end there. As Assistant Dean for Student Affairs, Gustin's job is to direct undergraduate student advising and to oversee other services provided to undergraduate students at the College. She also provides input on the implementation of policies affecting undergraduate students at the College. By contrast, Mancini controls the College's financial policies and procedures and oversees the College's budget and spending practices. With the approval of the Dean, it is Mancini who is responsible for the development and implementation of policies for the College, some of which Gustin may have recommended. It is clear from the evidence in the record that, while Gustin may have some involvement in activities that Mancini oversees (i.e., policy planning) it is Mancini who makes the final decisions (with, of course, the approval of the Dean of the College). Based on the evidence proffered, the only logical conclusion is that Mancini holds a position that requires a higher level of responsibility than Gustin's job, and thus, the salary difference is justified. Accordingly, we find that Gustin has failed to establish a *prima facie* case under the Equal Pay Act.

2.

Gustin next argues that the district court erred in finding that she failed to establish a *prima facie* case under Title VII. A *prima facie* case under Title VII is established if Gustin demonstrates that she is a member of a protected class and that the job she occupied was similar to higher paying jobs occupied by males. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992)). Ultimately, in setting forth a *prima facie* case under Title VII, Gustin bears the burden of proving an intent to discriminate on the basis of sex. *Id.*

Gustin argues that she established intent to discriminate in her affidavit, which states that in 1993, 1994, and 1995, the College paid equal or substantially equal salaries[3] to assistant deans who, while

---

[3]Where the salaries were not equal, they differed, at most, by three percent.

doing different jobs, functioned at the same level. However, this evidence does not demonstrate an intent to discriminate, it only shows that there was a time when assistant deans were paid equally. As we noted earlier, Mancini's job entails more responsibility than Gustin's job. Accordingly, his higher salary is justified. Gustin does not provide any further evidence in the record that would prove intent to discriminate. Therefore, we conclude that Gustin failed to satisfy her burden to present a *prima facie* case in her Title VII claim.

### 3.

Gustin's final claim is based on the WVRHA. Plaintiffs filing claims under WVRHA must satisfy the same evidentiary burden as plaintiffs filing Title VII claims. *Heston v. Marion County Parks and Recreation Comm'n*, 381 S.E.2d 253 (W. Va. 1989). Accordingly, for the same reasons that her Title VII claim fails, we conclude that Gustin's WVRHA claim also fails.

### C.

Finally, Gustin contends that the district court erred in granting summary judgment in favor of Defendants on her claim of retaliation. To establish a *prima facie* case of retaliation under West Virginia law, Gustin must prove: (1) that she engaged in a protected activity; (2) that Defendants were aware of the protected activity; (3) that she was discharged or suffered adverse employment action; and (4) that the discharge or adverse action followed the protected activity within such a time span that retaliatory motivation can be inferred. *Frank's Shoe Store v. West Virginia Human Rights Comm'n*, 365 S.E.2d 251, 259 (W. Va. 1986). To satisfy her burden, Gustin contends that retaliation against her occurred in the form of her removal from a committee, the removal of a key person from a committee Gustin chairs, the establishment of a committee to review Gustin's performance, and a cut in Gustin's undergraduate advising budget.

Gustin first claims that her removal from the Senior Management Team of the College, of which she had been a member for twenty years, was a retaliatory action. However, the testimony of Lee Dahringer, Dean of the College, indicates that Gustin was not removed from the committee. Dean Dahringer made a proposal to all College

management about the reorganization of the committee, and that proposal did not include Gustin as a committee member. After receiving Gustin's feedback about her removal, Dean Dahringer decided to reinstate Gustin to the committee. Even construing the evidence in the light most favorable to Gustin, the evidence does not lead us to conclude that this was an adverse employment action. Thus, we find that Gustin's temporary removal from the Senior Management Team was not a retaliatory action.

Next, Gustin claims that retaliation took place in the form of the removal of a key person from a committee she chairs. This claim is frivolous. There is no evidence in the record that demonstrates how this person's absence adversely affected Gustin or her ability to chair the committee. Accordingly, we find that this was not a retaliatory action.

Third, Gustin contends that a committee was formed to review her performance in retaliation for her filing suit against the Defendants. However, Dean Dahringer testified that the purpose of the committee was to evaluate Gustin's performance to see whether a merit raise was justified, and this committee was only formed *after* Dahringer met with Gustin to discuss the salary disparity between her and Mancini. Dahringer's testimony is further supported by a copy of an e-mail he sent that outlined his purpose for establishing the committee and indicated that Gustin was asked to submit names of individuals she thought would be appropriate members of the committee. Even viewing the evidence in the light most favorable to Gustin, the only logical conclusion is that the formation of the committee was the College's attempt to resolve Gustin's salary complaints. Thus, we find that the formation of the committee was not a retaliatory action.[4]

Finally, Gustin claims that a twenty-five percent reduction in her undergraduate advising budget was a retaliatory action. The only evidence in the record to support this contention is Gustin's affidavit, where she states: "The 2001-2002 budget for Undergraduate Advising

---

[4]Moreover, the committee never became a functioning entity. Even if the formation of the committee could be deemed the initiation of a retaliatory action, the fact that the committee never functioned negates the retaliatory nature of that action.

[ ] was cut by a significant percentage. This was one of the largest percentage cuts in the College [ ] while other budgets within the College [ ] received substantial increases." Gustin fails to proffer evidence to show how *she* was adversely affected by the budget cut. Without such evidence, Gustin cannot meet the third prong of the *prima facie* test for retaliation. *See Frank's Shoe Store*, 365 S.E.2d at 259. Accordingly, we find that the budget cut was not a retaliatory action.

Because we do not find any of Gustin's claims of retaliation to be valid, we affirm the district court's grant of summary judgment in favor of the Defendants.

### IV.

For the foregoing reasons, we affirm the district court.

*AFFIRMED*